J-S36009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EUGENE WATSON | : | |
| | : | |
| Appellant | : | No. 1496 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 29, 2024
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004640-2023

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED: December 23, 2025**

Eugene Watson appeals from the judgment of sentence imposed on January 29, 2024, after his guilty plea to third degree murder and related charges. Watson argues that the sentencing court abused its discretion by imposing consecutive sentences that resulted in an excessive and manifestly unreasonable aggregate sentence. We affirm.

On October 11, 2023, Watson pled guilty to one count each of third degree murder (18 Pa.C.S.A. § 2502(c)), conspiracy to commit murder (18 Pa.C.S.A. § 903), firearms not to be carried without a license (18 Pa.C.S.A. § 6106(a)(1)), and possession of a firearm by a minor (18 Pa.C.S.A. § 6110.1(a)). The Commonwealth stated the underlying facts in support of the guilty plea.

---

[*] Retired Senior Judge assigned to the Superior Court.

At CC 2023-4640[,] if the [Commonwealth] would have proceeded to trial the [Commonwealth] would have introduced testimony and evidence to show that on January 19, 2022, at 1343 hours Zone 1 of the City of Pittsburgh Police were dispatched to a student shot in front of Oliver Citywide Academy School. It was determined that—it was later identified that 15-year-old Marquis, M-A-R-Q-U-I-S Campbell, C-A-M-P-B-E-L-L, was suffering from gunshot wounds. He was lying on the floor of a white Ford Taurus van that was used to transport students to and from the school. Campbell was unresponsive and appeared to be bleeding from gunshot wounds to his chest. He was transported to Allegheny General Hospital where he was pronounced deceased at 1500 hours.

On January 20, 2022, an autopsy was performed by Dr. Goldschmidt, G-O-L-D-S-C-H-M-I- D-T, who determined that the cause of death was multiple gunshot wounds. The manner of death was homicide. The City of Pittsburgh detectives, including the Computer Crime Unit detectives, were able to recover surveillance footage from around the area and they found surveillance footage of the shooting itself, which showed two males that came into the school's parking lot and approached the van that the victim, Marquis Campbell, was [in].

They initially passed the van, then went back to the van, and you observe one individual dressed in black pants and a black sweatshirt that had a specific, like, Nike emblem on the front and across the chest with a Swoosh symbol below it, walk up to the van, pull out a weapon and shoot the individual [in] the van. At the time, Marquis Campbell was the only individual [in] that van.

Thereafter, both individuals, the second individual with the shooter, had come together and then had taken off on foot in the direction they came from. Pittsburgh Police continued to canvas the area for witnesses and cameras. They were able to find various pieces of footage of videos from residents and city cameras that basically showed the pathway that the two individuals fled.

They then, through that and the assistance of a K-9, located where the male in the black Nike hooded sweatshirt, which I represent to the Court was the shooter, go down Ingham Street, which is I-N-G-H-A-M, toward a dead end. And they followed that area with the assistance of a K-9, where they located the black Nike hooded sweatshirt and black sweatpants that matched the clothing of the shooter that was seen on video camera. Those were collected.

Those were tested for DNA against the defendant's DNA and it was determined a match. Additionally, the Nike hooded sweatshirt and the sweatpants also had characteristic and single particles present consistent with gunshot residue.

The second individual was identified by the defendant's brother [as] Brandon Watson. Brandon Watson has since been charged with criminal conspiracy for third degree murder. He admitted to that in Juvenile Court and was adjudicated delinquent of criminal conspiracy for third degree murder. Through their investigation, they had learned through a representative of the Academy that Brandon Watson and Eugene Watson had been in multiple physical fights with the victim, Marquis Campbell. Campbell had told the representatives from the Academy that Brandon Watson—that he had had problems with Brandon Watson in the past and indirectly with Eugene Watson. The motive for these fights prior to the murder was that words were exchanged involving previous friends and relatives who had been murdered. These prior fights supporting the motive would have been in September of 2021, October of 2021, and November of 2021.

The defendant was 17 years old at the time of the murder. So he was, therefore, unable to obtain a permit to carry a concealed firearm and is unable to legally possess a firearm. With that, the Commonwealth would rest.

Trial Court Opinion, 2/6/25, at 4-6 (quoting N.T., 10/11/23, at 5-9).

A sentencing hearing was held on January 25, 2024, after the preparation of a pre-sentence investigative report ("PSI"). At the hearing, Watson, his mother, the victim's mother, the victim's aunt, and the victim's sister offered testimony. The sentencing court sentenced Watson to 15 to 30 years' incarceration for third-degree murder, 3 to 6 years' incarceration for criminal conspiracy, 2 to 4 years' incarceration for firearms not to be carried without a license, and no further penalty for possession of a firearm by a

minor. Each sentence was imposed consecutively for an aggregate sentence of 20 to 40 years' incarceration.

On January 29, 2024, the sentencing court vacated its initial sentencing order to incorporate further arguments made by counsel, and imposed the same sentence as before. Watson filed post-sentence motions that were denied by operation of law on November 4, 2024. Watson timely appealed. Watson and the sentencing court complied with Pa.R.A.P. 1925. **See** Pa.R.A.P. 1925(a)-(b).

Watson raises a single issue for our review.

> The imposition of consecutive sentences at each count was an abuse of the sentencing court's discretion because it resulted in an excessive and manifestly unreasonable aggregate sentence which is contrary to fundamental norms and the dictates of the Sentencing Code. 42 Pa.C.S.[A. §§] 9701-9909.

Appellant's Brief, at 6.

Watson's claim challenges the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. Reid**, 323 A.3d 26, 29 (Pa. Super. 2024) (citation omitted).

To invoke this Court's jurisdiction over such a claim, an appellant must satisfy a four-part test:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has

- 4 -

a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Id.* (citation and brackets omitted).

Here, Watson filed a timely notice of appeal; he preserved the issue in his post-sentence motion; and his brief includes a Rule 2119(f) statement. Therefore, we must consider whether Watson has raised a substantial question in his Rule 2119(f) statement.

In his one-page Rule 2119(f) statement, Watson asserts that the consecutive sentences were excessive and focused solely on the seriousness of the offenses. *See* Appellant's Brief, at 9. "This Court has held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted). Therefore, Watson has raised a substantial question.

Watson asserts that the sentencing court abused its discretion by not considering his rehabilitative needs and imposing consecutive sentences, which resulted in an excessive aggregate sentence. *See* Appellant's Brief, at 15. We disagree.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Bullock***, 170 A.3d 1109, 1123 (Pa. Super. 2017) (citations and quotation marks omitted).

"The balancing of the sentencing factors is the sole province of the sentencing court." ***Commonwealth v. Miller***, 275 A.3d 530, 535 (Pa. Super. 2022) (citation omitted). Further, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Id.*** (citation omitted). It is within the sentencing court's discretion whether or not to impose consecutive or concurrent sentences. ***Commonwealth v. Brown***, 249 A.3d 1206, 1212 (Pa. Super. 2021). "We will not disturb consecutive sentences unless the aggregate sentence is 'grossly disparate' to the defendant's conduct, or 'viscerally appear[s] as patently unreasonable.'" ***Id.*** (quoting ***Commonwealth v. Gonzalez–Dejusus***, 994 A.2d 595, 599 (Pa. Super. 2010)) (alteration in original).

At the sentencing hearing, the sentencing court explained its reasoning for its sentence.

> I would like to thank the various family members for their presence on both sides of the aisle, so to speak, and composure and the dignity as you have shown for the course of these proceedings. It is most difficult in light of everything that occurred here. The circumstances are certainly tragic. A 15-year-old shot and killed in the midst of a school day. A 19-year-old responsible for that shooting. And the tragedy that not only unfolded that [] day, but unfolds every day in the lives of the surviving family members as the days, months and years go on.

Insofar as this tragedy is one of the many that occur on the streets of our city with youth and firearms, it's certainly something that affects everybody associated with these cases. Nonetheless, the court has the difficult assignment of sentencing a 19-year-old young man with other than perhaps the dynamics and particulars associated with the ongoing dispute and acrimony between the parties here, but otherwise, he had very little juvenile history and/or none.

The challenges that faced him by virtue of the particulars of the [PSI] and I am not saying this to embarrass his mom or his father, but there were a large periods of time where they were apparently absent in his life and he was left to the responsibility of the system and two persons, actually, who accepted him in to their home as a foster child. So he had challenges to deal with. There's no question about that.

Taking into account that history, taking into account the statements of his mother that she set forth today, the statement of his father read into the record, the age [of Watson] at the time of the incident, the rehabilitative potential, as I noted the absence of criminal history, his statements of remorse today.

On the other side of the coin, the most weighted factor, of course, is the loss of life. A 15-year-old young man, as his mother said today, no child should go to school and not come home. I'll take into account the statement of his aunt and his sister, the protection of the public, the gravity of the offense, and, again, [Watson's] background.

The court in light of all of that, consistent with my obligation under Title 42, 9721, will sentence [Watson] as follows: Understanding, of course, by virtue of the plea agreement, he has lost the exposure to a potential life sentence, which was factually present here by the multiple gunshots to the chest of this young man that was unarmed with no avenue of escape.[1]

And part of the plan between him and his brother, as his sister used the words, I think hunted down, is perhaps too strong from a legal point of view at this juncture. But, nonetheless, this was a

---

[1] As part of the plea agreement, the Commonwealth amended count 1 from criminal homicide to third-degree murder. *See* N.T., 10/11/23, at 2.

plan and an executed attack on, again, an unarmed 15-year-old with no avenue of escape.

Trial Court Opinion, 2/6/25, at 8-9 (quoting N.T., 1/25/24, at 21-25) (unnecessary capitalization omitted).[2]

We discern no abuse of discretion. We first observe that the sentencing court considered the PSI, so it is presumed to have been aware of all pertinent factors when imposing sentence. *See Commonwealth v. Agugliaro*, 342 A.3d 105, 117 (Pa. Super. 2025) ("Where PSI reports exist, we . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.") (citation omitted). Before imposing its sentence, the sentencing court thoughtfully detailed its weighing of the sentencing factors given the tragic circumstances of a teenager shooting and killing another teenager. Further, we see no reason, and Watson does not provide one, for how an aggregate sentence of 20 to 40 years is grossly disparate to the murder of a teenager at school. Therefore, Watson is not entitled to relief and we affirm.

Judgment of sentence affirmed.

---

[2] The sentencing court reiterated these sentiments at the amended sentencing hearing when it reimposed its initial sentence. *See* N.T., 1/29/24, at 8-9.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/23/2025